**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION**

| | | |
|---|---|---|
| **SERGIO DAVID BEZERRA,** | § | |
| **TDCJ No. 01977918** | § | |
| | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **W-19-CV-575-ADA** |
| | § | |
| **BOBBY LUMPKIN,**[1] **Director,** | § | |
| **Texas Department of Criminal Justice,** | § | |
| **Correctional Institutions Division,** | § | |
| | § | |
| **Respondent.** | § | |

**<u>ORDER</u>**

Before the Court are Petitioner Sergio David Bezerra's counseled Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent's Response (ECF No. 7), and Petitioner's Reply (ECF No. 9). Having reviewed the record and pleadings submitted by both parties, the Court concludes Petitioner's federal habeas corpus petition should be denied under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

**I.  Background**

In October 2012, Petitioner was charged by indictment with four counts of Indecency with a Child by Contact. (ECF No. 7-55 at 1-3.) In December 2014, a jury convicted Petitioner of all four counts and sentenced him to twenty years imprisonment on

---

[1] The previous named respondent in this action was Lorie Davis. Bobby Lumpkin succeeded Ms. Davis as the Director of the Texas Department of Criminal Justice, Correctional Institutions Division and is automatically substituted as a party. FED. R. CIV. P. 25(d).

each count, to run consecutively. *State v. Bezerra*, No. 2012-1907-C2 (54th Dist. Ct., McLennan Cnty., Tex. Dec. 16, 2014.) (ECF Nos. 7-57 at 13 to 7-58 at 1-6.) The following is a brief summary of the factual allegations against Petitioner.

> [Petitioner] was charged by indictment with four counts of indecency with a child by contact committed against two complainants. These charges arose from allegations that appellant rubbed the two complainants' legs over their clothes near their privates during a third grade Spanish class that [Petitioner] taught. [Petitioner] was also alleged to have put his hand in the lap of the complainants and put their hands in his lap. [Petitioner] also allegedly made the complainants sit on his lap and face him in a way that caused their privates to touch.

> During the State's case, it offered the testimony of [Petitioner]'s adopted daughter, M.G. Over [Petitioner]'s objection, M.G. testified that, when she was still a minor, appellant had put her hand on his penis, and repeatedly entered her bedroom while she was sleeping and touched her vagina. After M.G. reached majority, she sought counseling with Fred Capps, a licensed professional counselor. Capps also testified, over objection, about his treatment of M.G. for the sexual assaults committed by appellant.

> The State also offered the testimony of one of [Petitioner]'s former students that appellant asked her to hold his hand and kiss him while she was still in high school. The witness testified that appellant accepted her refusal of his proposition and that she was able to cut contact with appellant after she left high school.

> [Petitioner] testified that he did not have any sexual contact with the complainants or his adopted daughter. He testified that, due to medications he takes for heart problems, he has not had an erection or sexual desire since 1993. He denied propositioning his former student.

*Bezerra v. State*, 485 S.W.3d 133, 137 (Tex. App.—Amarillo Jan. 14, 2016, pet. ref'd) Petitioner's conviction was affirmed on appeal. *Id.* On June 15, 2016, the Texas Court of Criminal Appeals (TCCA) refused Petitioner's Petition for Discretionary Review (PDR). *Bezerra v. State*, No. PD-118-16 (Tex. Crim. App. June 15, 2016). On November 28, 2016,

the United States Supreme Court denied Petitioner's petition for a writ of certiorari. *Bezerra v. Texas*, No. 16-324, 137 S. Ct. 495 (2016).

On September 21, 2017, Petitioner filed a counseled state habeas corpus application (ECF Nos. 7-32 at 7 to 7-33 at 9), and then filed an amended application on March 9, 2018 (ECF Nos. 7-50 at 5 to 7-51 at 6), listing the following grounds of relief:

1. Trial counsel provided ineffective assistance of counsel at the guilt-innocence stage when counsel
   a. failed to file motion in limine and/or failed to object to
      i. Sergeant Holt's testimony that he could not interview Petitioner because Petitioner had invoked his right to counsel;
      ii. Sergeant Holt and psychologist William Carter's reference to the complainants as "victims";
      iii. Sergeant Holt's testimony that one of the complainant's was talking about Petitioner's penis when she referred to his "bumpy part";
      iv. M.G.'s testimony that she was "pretty sure that it happened to [the complainants] because it had happened to me";
      v. the testimony by Fred Capps, a licensed professional, that M.G. was not "faking" her abuse;
      vi. psychologist Kristi SoRelle's testimony that the complainants' stress was related to sexual abuse;
      vii. Carter's testimony that the complainants' body language, conduct, and demeanor were consistent with what he had seen in other abused children;
      viii. M.G.'s testimony that she had problems being intimate with her husband because of what Petitioner had done to her;
      ix. Petitioner's testimony that M.G. and the other extraneous offense complainants were lying;
      x. the complainants videotaped interviews at the CAC [(Children's Advocacy Center)];
   b. opened the door to the prosecutor asserting that M.G.'s sister, A.G., had accused Petitioner of abusing her;
   c. failed to elicit testimony regarding the civil lawsuit the complainants' parents settled against the Waco Baptist Academy and that SoRelle had coached complainants to embellish their outcries with sexual abuse; and
   d. had Petitioner testify that he suffers from erectile dysfunction, which permitted the state to call Petitioner's doctor in rebuttal to testify that Petitioner's medications did not cause this side effect and Petitioner had never complained of erectile dysfunction.

2.  Trial counsel provided ineffective assistance of counsel at the punishment stage by failing to file a motion in limine and object to the testimony from the complainants' mother and father that Petitioner should never be around children and it would give the family closure if he were gone forever.

3.  Trial and appellate counsel provided ineffective assistance of counsel when they failed to object to the trial court's cumulation orders.

(ECF No. 7-50 at 10-14.) On October 5, 2017, the state habeas court ordered Petitioner's trial counsel, Mr. Philip D. Frederick and Mr. Robert T. Swanton, to file affidavits addressing these issues. (ECF No. 7-49 at 1-2.)

After trial counsel submitted their affidavits, the state habeas court held an evidentiary hearing on February 22, 2018. (ECF No. 7-30.) On May 15, 2018, the state habeas court adopted the State's Proposed Findings of Fact and Conclusions of Law and recommended denying Petitioner's application for a writ of habeas corpus. (ECF Nos. 7-53 at 8 to 7-54 at 9.) On September 4, 2019, the TCCA denied Petitioner's application without written order on the findings of the trial court after hearing. *Ex parte Bezerra*, No. WR-88,454-01. (ECF No. 7-28.)

On October 9, 2019, Petitioner filed the instant federal habeas petition through counsel, raising the following grounds of relief:

1.  Ineffective assistance of trial counsel at the guilt-innocence stage when counsel
    a.  Failed to object to admissible lay and expert witness testimony that the complainants and the extraneous offense complainants were telling the truth about the sexual abuse; and

    b.  Failed to present testimony that the complainants' parents sued their school and Petitioner and entered a contingent fee agreement to pay a psychotherapist if she could get the complainants to say that Petitioner sexually abused them.

4

(ECF No. 1.) On December 19, 2019, Respondent filed their response (ECF No. 6) to which Petitioner replied (ECF No. 9).

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer*

5

*v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

#### A. Ineffective Assistance of Counsel

Petitioner's federal habeas claims are based on allegations that his trial counsel provided constitutionally deficient assistance of counsel. The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced a petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that

"[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011)). In such cases, the "pivotal question" is not "whether defense counsel's

performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

### 1. Failure to object to inadmissible testimony

In his first ground for relief, Petitioner claims his trial counsel, Mr. Frederick and Mr. Swanton, provided ineffective assistance of counsel when they failed to object when M.G.—Petitioner's adopted daughter—testified she "was pretty sure that I knew [Petitioner had sexually abused complainants] because it had happened to me." (ECF No. 1-1 at 22.) Further, Petitioner claims trial counsel also provided ineffective assistance by failing to object when Fred Capps, a licensed professional counselor who treated M.G., testified he was disturbed about the abuse in the case and he did not believe M.G. was "faking." (*Id.* at 23.)

Mr. Swanton and Mr. Frederick addressed these allegations in their state habeas affidavits:

> In this ground, applicant alleges that counsel failed to file a Motion in Limine regarding testimony that complainants were telling the truth and that applicant was guilty.
>
> Counsel did file a Motion in Limine with respect to the issue about truth telling. This was listed as Item #9 in the Motion in Limine filed with the Trial Court. This item was granted by the Trial Court. The purpose of filing this specific item in the motion was to hopefully put everyone on notice that this is an issue to be careful about and warn witnesses or instruct them not to violate the motion. Inevitably in the course of many trials, Motions in Limine are in fact violated. When that happens, Counsel must make a strategic decision whether to object and risk potentially highlighting that particular issue for the jury. Even if the Judge would sustain the objection and instruct the jury to disregard the testimony elicited, that event often serves as a potential highlighting of the testimony for the jury.

It does not appear that any of the witnesses actually testified that any other witness was "telling the truth." While it is possible to argue that the testimony which is the subject of this specific complaint can be categorized as testimony which tends to support the veracity of the allegations involved in this case, they do not necessarily violate the Motion in Limine which was filed. Objecting to the testimony could have once again highlighted that testimony for the jury which would have potentially exacerbated any ill effects from this testimony.

(ECF Nos. 7-49 at 10; 6-1 at 3.)

At the state habeas evidentiary hearing, Mr. Frederick testified that he did object to M.G.'s testimony as inadmissible extraneous evidence testimony, but that it was overruled. He agreed with Petitioner's counsel that he should have objected that the testimony violated the motion in limine, but elected not to because it would highlight the testimony for the jury, which Frederick described as "extremely emotional":

I mean, highlighting anything during this -- sometimes you just want to take that testimony and move on. So I – I understand where you're going and I can certainly see the benefits to that approach. But, again, making difficult decisions in trial Monday morning after a conviction, we would change how we did it. Would I change how I did it today? Yes, I would, obviously. But at that time that appeared to be the right decision to make.

(ECF No. 7-30 at 64-67.) Regarding Mr. Capps's testimony that he did not believe M.G. was "faking" it, Mr. Frederick testified

I think that it showed that Dr. Capps didn't test what he was told in any way. He accepted everything at face value. And if you'll look at the cross-examination of him concerning the validity of his tests, the reliability of his tests, what can you really determine from his questions, it shows that he had two, I think, 30-minute sessions with her and reached all of those conclusions based on an EDM or -- I can't remember what the process was -- that was almost laughable to me.

(*Id.* at 68-69.) Upon review of trial counsels' affidavits and Mr. Frederick's testimony at the evidentiary hearing, the state habeas court made the following findings:

3. The affidavits are found to be true, correct, and worthy of belief. The affidavits are accepted for all purposes.

4. This Court also relies on its personal recollection of the evidence and testimony adduced at trial.

. . . .

15. Dr. Capps' testimony that he did not believe M.G. was faking was objectionable.

16. Trial counsel made the strategic decision not to object based on the brevity of the improper question, the fact that the question came directly after trial counsel cross examined Dr. Capps and Dr. Capps admitted that his treatment is not designed to validate the allegations in anyway. Trial counsel made the strategic decision to not object to the complained of testimony in order to not highlight it for the jury as they reasonably determined that based on the context it was not harmful.

17. Trial counsel's decision to not object to Dr. Capps' testimony was based on a reasonable strategy. Objecting would have further highlighted the statements for the jury and allowed the State to continue to ask questions of Dr. Capps regarding M.G.'s allegation. The question and answer further highlighted trial counsel's cross examination of Dr. Capps and showed his bias in believing M.G. without showing any basis for that belief. This testimony supported the defensive theory of bias and assumptions based on little to no support, and trial counsel was reasonable to believe that the statement was very transparent in showing Dr. Capps' bias.

18. Any possible deficient performance for failing to object to Dr. Capps' testimony did not prejudice Applicant. The brief nature of the complained of testimony, especially in context of the cross examination, when compared with the overwhelming evidence of guilt of Applicant and the testimony of multiple victims of sexual abuse, did not have a substantial effect on the verdict in this case.

. . . .

21. M.G.'s testimony that she was pretty sure it happened to the complainants because it happened to her was objectionable. However, trial counsel made a reasonable decision in choosing to not object. The statement was brief and made during an emotion[al] part of M.G.'s testimony. Objecting to the statement would have served to highlight it for the jury. Additionally, a jury would have already assumed that M.G. believed

the complainants because she testified that Applicant also sexually abused her. The complained of statement by M.G. had little or no effect on the jury in reaching their verdict in this case. *See Cueva v. State*, 339 S.W.3d 839, 868 (Tex. App.--Corpus Christi 2011, pet. ref'd).

22. Trial Counsel was not deficient for failing to object to the complained of testimony by M.G.

(ECF Nos. 7-53 at 11, 13 to 7-54 at 1-2.)

This Court's review of Petitioner's claim is guided by the AEDPA, under which Petitioner must show that the state habeas court's determination was an unreasonable application of *Strickland*. The Court concludes it was not. The habeas court—which was the same as the trial court—concluded that trial counsel's decision not to object to either Capps or M.G.'s testimony were reasonable decisions based on not wanting to highlight brief and, in the case of M.G., highly emotional testimony. Trial counsel has broad discretion when it comes to deciding how best to proceed strategically. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015) (the Supreme Court has emphasized counsel has "wide latitude in deciding how best to represent a client"); *see also Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (presumption of correctness afforded to state habeas court's determination of a factual issue is especially strong when state habeas court and trial court are one in the same) (citations omitted). This Court is mindful that "Strickland does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). In other words, simply because counsel's strategy was not successful does not mean counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

11

Even if, as Petitioner argues, trial counsel's failure to object to the M.G. and Mr. Capps's testimony constituted deficient performance, Petitioner has failed to show prejudice. To show prejudice, Petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Further, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112. *See also Pondexter v. Quarterman*, 537 F.3d 511, 520 (5th Cir. 2008) (finding an ineffective-assistance claim may be rejected for want of either deficient performance or prejudice, and thus the absence of either prong of the *Strickland* analysis is dispositive).

The state habeas court found that, while this testimony was objectionable, trial counsels' failure to object did not prejudice Petitioner: Capps's statement was brief, made during cross-examination, and insubstantial in the context of overwhelming evidence of guilt. As for M.G.'s statement, the habeas court cited Texas law in finding that the jury would have likely assumed M.G. believed the complainants, even without her objectionable testimony, given she testified that Petitioner sexually abused her as well. Petitioner has not shown that, but for his trial counsels' failure to object to this testimony, there is a reasonable probability that the outcome of the trial would have been different. As a result, this Court concludes that the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

*2. Failure to elicit testimony regarding the civil lawsuit*

In Petitioner's second claim, he argues trial counsel provided ineffective assistance when they failed to elicit testimony regarding the civil lawsuit the complainants' parents settled with Petitioner's former employer, Waco Baptist Academy. Petitioner alleges the civil lawsuit and subsequent criminal prosecution were based on an unethical contingent fee agreement entered into between the parents and a psychotherapist, Kristi SoRelle, whereby Ms. SoRelle had a financial incentive to coach the complainants into accusing Petitioner of sexual abuse. Ms. SoRelle recovered over $17,000 in fees when the civil case was settled.

> Mr. Swanton responded to this claim in his affidavit:
>
> Ground Number 8: In this ground applicant asserts that it was a mistake not to elicit testimony about the civil lawsuit which had been filed regarding the allegations in this case or that the complainants might have been coached in their testimony. We made a trial strategy decision which included the filing of a Motion in Limine regarding the civil lawsuit. Frankly, we wanted to keep the existence of the civil lawsuit out of evidence. Prior to the criminal case going to trial, the civil lawsuit was settled in favor of the Plaintiffs. We knew that if we brought up the filing of the lawsuit that could possibly open the door to the fact that the matter had been settled in the complainants' favor, that other lawyers and insurance company personnel had evaluated the case and thought it was worthy of settling out of court. It was our opinion and the opinion of the client that this settlement, if brought out before the jury, could result in a very negative reaction from the jury toward the defendant.

(ECF No. 7-49 at 12.) At the evidentiary hearing, the following exchange occurred between Mr. Frederick and Petitioner's counsel:

> Q. All right. You say in your affidavit you wanted to exclude that a civil lawsuit had been settled, correct?
>
> A. Yes.

13

Q. And, in fact, you put that in your motion in limine, did you not?

A. We did, yes.

Q. But you did not respond in your affidavit to the aspect of why you would not go into the fact that Kristi SoRelle coached the complainants to get their stories to where they were?

A. Well, I think -- I think the word "coaching" is a characterization that you have to argue and prove. I don't -- I mean, there -- as far as opinions expressed in the civil -- in the civil discovery, there certainly were opinions that they had been helped along, coached, whatever those words are. But trying to prove that in a courtroom is different. For us to go into the civil case, we've got to take all of the civil case. We've got to take the fact that the school paid a little less than $200,000.00. We have to take a lot of that information that's out there and possibly the opinions of those paid experts to come into this courtroom and -- and battle it out. I don't think there's a net benefit. We certainly had lengthy conversations with Sergio and his wife about should we explore the civil. We talked about the potential biases that were with the civil case. But all of the baggage that it brought with it, it was a decision to not go into the civil case. I certainly see your theory. Great theory. It would be something to try. Because we tried a defense and on Monday morning if that defense doesn't work, you think, I need to come up with something different to do. I think it was the right decision at that time. My – I'm worried by the fact that a jury would listen to testimony that the school had elected to pay that amount of money.

(ECF No. 7-30 at 90-91.) Upon review of trial counsels' affidavits and Mr. Frederick's

testimony at the evidentiary hearing, the habeas court made the following findings:

35. Trial counsel made the strategic decision to avoid mention of the previously settled civil lawsuit in this case. Had counsel attempted to show bias or motive of the complainants or their parents based on the civil lawsuit, the state would have been able to enter evidence of the settlement of the lawsuit prior to this case being indicted. Trial counsel made a reasonable strategic decision in choosing to avoid the civil lawsuit for the fear that the jury would have viewed the settlement as evidence of guilt. *See Gonzalez v. State*, 03-07-00323-CR, 2008 WL 2736889, at *4 (Tex. App.--Austin July 10, 2008, pet. ref'd) (holding that a civil lawsuit settled two years prior to trial does not show a financial bias or motive to testify at the subsequent criminal trial).

14

36. Trial counsel thoroughly reviewed the civil discovery in preparation for this trial and the decision to avoid mention of the civil lawsuit was made after that review, with input from a retained expert, Michael Gottlieb.

37. The civil discovery indicated that there were opposing experts that had different views of the interpretation and evolution of the case.

38. The settlement of the civil lawsuit was more than two years prior to the trial in this case and several months before the indictment in this case.

39. Based on the timing of the settlement, the multiple interpretations by competing experts, the potential negative inferences that could be drawn by the jury by the settlement, trial counsel[s'] decision to avoid mention of the civil lawsuit was reasonable.

40. Had trial counsel elicited testimony regarding the civil lawsuit the outcome of the trial would not have been different. The evidence in this case consisted of multiple victims, including Applicant's stepdaughter. Any attempt to show that SoRelle was bias[ed] would have been negated by the testimony of the extraneous victim, M.G., who was never seen or spoken to by Kristi SoRelle.

(ECF No. 7-54 at 5-6.)

As noted in the prior section, trial counsel has wide latitude in determining trial strategy. *See Ward*, 777 F.3d at 264. In fact, "[d]efense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)). Further, the Fifth Circuit has explained that counsel is afforded particular leeway where a potential strategy carries "double-edged" consequences. *Id.* (citing *St. Aubin v. Quarterman*, 470 F.3d 1096, 1103 (5th Cir. 2006)); *see also, Mann v. Scott*, 41 F.3d 968, 984 (5th Cir. 1994) (strategic decisions with double-edged consequences are granted a heavy measure of deference in a subsequent habeas corpus attack) (quotations and citations omitted).

15

Here, eliciting testimony regarding Kristi SoRelle's contingent fee agreement would have opened the door to the entire civil lawsuit being admitted into evidence, along with the large settlement. As the habeas court noted, the decision to exclude the civil litigation from Petitioner's criminal trial was reasonable given this likely consequence, and Petitioner's allegation that SoRelle coached the complainants into their sexual abuse allegations would have been contradicted by M.G.'s testimony.

Again, simply because trial counsels' strategy was not successful does not mean their performance was deficient. *Avila*, 560 F.3d at 314. Accordingly, the state habeas court's application of *Strickland* was not unreasonable, and this claim is denied.

### IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the

constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of the Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is **FURTHER ORDERED** that no certificate of appealability shall issue in this case.

**SIGNED** on April 8, 2021

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE

17